## CERTIFICATES AS TO " FULLY PAID AND NON-ASSESSABLE STOCK."

Circuit Court of Cuyahoga County.

JOSEPH R. NUTT v. MINNIE A. WHEELER.

Decided, October 21, 1907.

*Corporations—Liability of President for Deceit—In Certifying that Stock is Fully Paid and Non-Assessable—Does not Arise, When.*

One who purchases stock in an Ohio corporation on the open market for about twenty-five per cent. of its face value, without inquiry as to the assets of the company, or the representations made upon the face of its certificates of stock, can not, upon ·the subsequent insolvency of the company, recover the amount paid for said stock from the president of the company in an action for deceit, upon an alleged misrepresentation made by him when he signed certificates of stock certifying that they were "fully paid and non-assessable," notwithstanding said president knew that upon the original issue of said stock property greatly over-valued had been received by the company in payment for it.

WINCH, J.; MARVIN, J., concurs; HENRY, J., not sitting.

Error to the Court of Common Pleas.

It appears from the record of this case that defendant in error, who was plaintiff below, was a school teacher, who also speculated in stocks dealt in on the stock market in Cleveland, Ohio, and that in September, 1902, through a broker in said city, she bought on the open market thirty-five shares of the capital stock of the Springfield & Xenia Traction Company, for which she paid $28 per share. Her instructions to her broker were contained in the following letter to him:

"GARRETTSVILLE, OHIO, September 16th, 1902.
"MR. CARL S. RUSSELL.

*Dear Sir:* I beg leave to acknowledge your favor of the 15th. Accept my thanks for the execution of the Western Railway commission upon such favorable terms. I also desire to thank you for taking such very good care of my interests in the C., D. & T. deal. I wish you would expend the proceeds from the sale of that stock in the purchase of some good trac-

tion stock which your best judgment leads you to believe will be a rapid riser.    How is that new Springfield & Xenia road financed?    I have faith in any road under the Mandelbaum and Pomeroy syndicate, or in the ultimate success of a company financed by the Everett-Moore combination.    I am out of the city, so can not talk over the investment with you, but I assure you my previous transactions lead me to trust implicity in your business sagacity.    Yours truly, ~

"MINNIE A. WHEELER."

This stock did not prove a "rapid riser," but turned out to be a "rapid faller," the company defaulting in the payment of interest on its bonds, a receiver being appointed, and a suit being brought in behalf of its creditors in the Common Pleas Court of Clark County, against Miss Wheeler and other stockholders of the company, to enforce their stockholders' statutory liability.

Thereupon Miss Wheeler brought an action in deceit against Nutt, he being president of the company at the time her stock was transferred to her, and having as such signed the certificate for thirty-five shares issued to her, which on its face he certified to be "fully paid and non-assessable."

In her petition she sets forth what she claims to be the transaction whereby $500,000 of the stock of the company was originally issued to said Nutt and his associates, without any consideration whatsoever; that Nutt signed her certificate as president of the company, knowing at the time he signed it that the company had never been paid for it; that at the time of the disposal of the stock of the company, it was insolvent and that Nutt knew of its insolvency.

The petition further alleges that certificates so issued found their way into the market, where Miss Wheeler, relying upon the statement upon their face, that the stock was fully paid and non-assessable, bought thirty-five shares for which she paid $980; that she believed said statement to be true and later discovered that it was untrue and that her stock was worthless.

The prayer of the petition is that she recover from Nutt the money she paid another for her stock, plus the amount which she alleges as her contingent liability in said suit pending in Clark county.

The conceded facts regarding the deal whereby the $500,000 of stock of the company was originally issued, as shown by the record, are as follows:

One Martin and associates having acquired franchises for a traction company in the cities of Springfield and Xenia and made some progress towards acquiring a right of way for a suburban road between said cities, and being unable themselves to finance the proposition, applied to Nutt to help them out. He agreed with them to organize a company with $500,000 stock, cause it to issue $400,000 of bonds and deliver to Martin and associates $140,000 of said stock and $40,000 of bonds, and sell the balance of the bonds, $360,000, using the proceeds thereof in completing and equipping the proposed road. Martin and associates were to deliver to Nutt or the company so to be organized by him, all their franchises and property; and also agreed to furnish a complete private right of way between Xenia and Springfield along lines satisfactory to the purchasers.

This agreement was carried out, but Nutt, in turning the property over to the company, which later became known as the Springfield & Xenia Traction Company, induced it to issue to him therefor $500,000 of stock and $40,000 in bonds. He delivered to Martin and associates $140,000 of this stock and $40,000 of bonds, as he agreed, though this is questioned by one of Martin's associates who thinks only $30,000 in stock and $30,000 in bonds were so delivered. Whether Martin dealt fairly with his associates, however, is immaterial.

The $360,000 of stock remaining in Nutt's hands by this transaction he gave as a bonus to the subsequent purchasers of the $360,000 of bonds sold for construction purposes, each purchaser of a $1,000 bond thus receiving ten shares of stock.

It is a part of this bonus stock which subsequently found its way upon the market in Cleveland, and was bought by Miss Wheeler, not from Nutt, but from some third person.

Upon the fact that Nutt paid Martin some $360,000 less for the property than he sold it to the company for, and the opinion of one expert, A. B. Dupont, that at the time it was probably not worth more than $100,000, the point was attempted

to be made by the plaintiff below, that the stock issued by the
company was never paid for.   This expert, however, admitted
that if the franchises "were in the hands of somebody who
had the power and would build the railroad, he could probably
unload the railroad at a great deal more than its physical cost."

On the other hand, five experts for the defendant, all well-
known traction men, testified that the franchises transferred to
the company were worth from $500,000 to $750,000.

The trial court submitted the cause to the jury, limiting the
plaintiff's right to recover to the amount she had paid for her
stock, with interest, and the jury brought in a verdict for her
in that amount.

In this court several errors in the record are complained of,
but the most important ones, in our view of the case, are that
the verdict is against the weight of the evidence, and that the
motion of defendant at the close of plaintiff's evidence, to
direct a verdict for the defendant, should have been granted.

If Mr. Nutt made any misrepresentation to Miss Wheeler, it
was made either by the express language on the face of the
stock certificate which she bought, or it was implied from the
existence in the market of stock certificates signed by Mr. Nutt,
or placed on the market directly or indirectly by him.

As the record discloses that Miss Wheeler never saw a stock
certificate of the Springfield & Xenia Traction Company until
after she had bought her thirty-five shares and had her own
certificate issued to her, there was no express representation
to her, and as her testimony shows that she had no thought as to
the difference between "certificates of stock" and "stock"
itself, but was looking for a "rapid riser" as a speculation,
there was no implied representation arising from the presence
of *certificates* of stock in the market.

In other words, bearing in mind that the original issue of
this stock was not absolutely void, as in the case of fraud-
ulently issued or over-issued stock, but, at the most, was void-
able only, we think that no material representations upon which
Miss Wheeler relied as to the *value* of this stock arose from
the mere presence of certificates in the market which, indeed,
purported to be fully paid and non-assessable, but which she

had never seen, heard of, or, apparently, thought about. She wanted to get rich quick and more than one broker having told her that Springfield & Xenia was good "stock," and believing it would be a "rapid riser," she bought without inquiry as to its assets or the amount of stock it had issued, and paid $28 per share.

The price she paid for the stock is significant, as pointed out by Judge Sharswood in the case of *McAleer* v. *McMurray*, 58 Pa. St., 126, 129, and rebuts the remote inference arising from the mere presence of stock certificates on the market, that they had been issued but a short time before her purchase upon the payment of par for them.

It is unnecessary to recite Miss Wheeler's evidence at great length, but is sufficient for us to say that as we weigh it, she failed to show that she parted with her money at the time she bought this stock by reason of her reliance upon the representation which she now says Nutt falsely made to her.

As we view this case, there is another reason why Miss Wheeler can not recover under any view of the evidence.

Miss Wheeler is a transferee of stock, not a creditor of the company. The representation made to her and the class she belongs to, to-wit, stockholders, in law is no misrepresentation, but is true.

Nutt, when as president of the company, he signed stock certificates purporting to be fully paid and non-assessable, stated to the persons to whom he issued said certificates and their transferees, what was clearly true under the facts of this case.

This court held in the case of *Orton* v. *Edson Reduction Machinery Company*, 5 C. C.—N. S., 540, 543 (affirmed without report, 75 O. S., 580), that:

"A corporation having issued its stock as fully paid, in exchange for property transferred at an agreed valuation, can not thereafter, without the consent of the stockholders, treat his stock as only partially paid and assess him for the difference between the market value of said property and the par value of the stock issued in exchange for it."

At the bottom of page 543, we say:

"The authorities, however, agree that:

"The corporation itself, after issuing its stock as paid up stock, and declaring it so to be, can not subsequently repudiate that declaration and agreement and proceed to collect, either from the person receiving the stock, or his transferee, the unpaid part of the par value. It is estopped from so doing. Where, however, actual fraud enters into the transaction, then a corporation is not estopped from having the agreement set aside. The person receiving the stock can then be compelled to return the stock or its market value, and take back that which he gave to the corporation for it. But. the corporation can not .hold him liable for the par value of the stock." (1 *Cook on Corp.*, Section 38). See also 2 *Thompson on Corp.*, Chapter XXVII, *passim.*

So we see that this representation, as made to stockholders and transferees, was truthful and it was Nutt's duty, as president of the company, to make it to them.

As to the right of stockholders, as such, among themselves, if Nutt ever received stock which he never fully paid for, and as to the rights of creditors in such case, we say nothing. We simply hold that Miss Wheeler has misconceived her remedy against Nutt, which must be for the fraud in his original transaction with the company, if any, and not for his subsequently signing and issuing stock certificates.

In this connection it is significant that the pleadings and record disclose that the creditors of the company in the case pending in Clark county have not claimed that there was any fraud in the original issue of stock, but are suing for an assessment of the stockholders' statutory liability. There the matters here complained of can be fully investigated, while here the fact that the property was over-valued when stock was issued for it, is made to depend upon the opinion of one expert, contradicted, as he is, by five others, equally good. However, we do not desire to be taken as approving the example of high finance here made public.

There are other errors in the record, besides the overruling of the defendant's motion to direct a verdict in his favor, which we shall briefly mention.

We think it was error to admit in evidence the Kushman

stock certificates, as it was not claimed that the plaintiff had ever seen them before she purchased her stock.

It was error to refuse to submit the defendant's eleventh and twelfth interrogatories to the jury.

By the jury's answer to the defendant's third interrogatory it showed that it did not understand the case submitted to it. The interrogatory and answer are as follows:

"What misrepresentation, if any, was made to the plaintiff by the defendant, with knowledge on the defendant's part of its falsity and with intent to deceive and on which she relied in making her purchase?"

Answer: "The fact of J. R. Nutt being connected with the Springfield & Xenia Traction Company as president."

This "fact" was not a misrepresentation, nor was it the one charged in the petition.

The answer is not responsive to the question, and, of course, is no justification for the jury's verdict. While we would not say that this special finding is so contrary to the general verdict as to warrant a judgment on it for the defendant, it nevertheless shows plainly that the jury had no intelligent conception of the case before it, and would be sufficient reason for a new trial, were we disposed to send the case back for further proceedings.

For the errors pointed out the judgment is reversed, and because, upon the conceded facts as to the original issue of stock, we think the plaintiff below has misconceived her remedy, judgment is rendered for the plaintiff in error.

*McGraw & Messick,* for plaintiff in error.

*Arnold Green* and *Thomas Gibbons,* for defendant in error.